# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

—————————————

Case Nos. 5D2024-0861
5D2025-0335
LT Case Nos. 2020-CA-001953
2017-CP-001518

—————————————

MARGARET GREEN a/k/a PEGGY
M. GREEN, Individually AND IN
HER CAPACITY AS GENERAL
PARTNER OF BIG OAKS RANCH
LIMITED PARTNERSHIP, et al.,

   Appellant,

   v.

RAYMOND M. GREEN and
RICHARD B. GREEN, IN THEIR
CAPACITY AS LIMITED PARTNERS
OF, AND DERIVATIVELY FOR, BIG
OAKS RANCH LIMITED
PARTNERSHIP, et al.,

   Appellees.

—————————————

On appeal from the Circuit Court for Seminole County.
John D. Galluzzo, Judge.

Alan Lawson, Jason Gonzalez, Eric Reed, Mathew Gutierrez, and
Caroline May Poor, of Lawson Huck Gonzalez, PLLC,
Tallahassee, and Christopher N. Bellows, Ryan Kocse, and Chazz
Freeman, of Holland & Knight, LLP, Miami, and Meredith Pitts
Smith, of Copeland, Covert and Smith, PLLC, Altamonte
Springs, for Appellant.

Thomas Todd Pittenger and Kelly Garcia, of GrayRobinson, P.A., Orlando, for Appellees.

July 24, 2026

EDWARDS, J.

Appellant, Peggy Green, argues that the trial court erred by entering a final judgment ruling that the term "my homestead property" as used in a devise to her, contained in her father's trust, referred only to her father's home and the 1.57 acres immediately surrounding the house. Appellant asserts that her father, Dr. Quentin Green, consistently referred to his "homestead" as being approximately 160 acres on which his home was located.[1] The 1.57 acres surrounding the home, referenced above, were a part of the 160 acre larger "homestead" parcel. The trust identified "my homestead property" by a street address; no legal description was included, despite the explicit statement in the trust that it would be provided.

Appellant points out that the very next provision in the trust directed the trustee to distribute to Appellant all of Dr. Green's "farm equipment, cattle, vehicles, and all other tangible person property reasonably required to operate agricultural enterprises on the above described property." The only property described above that devise was "my homestead property."

---

[1] According to a surveyor's testimony, the 160 acre "homestead" was closer to 177 acres in area. For simplicity and consistency, this will be referred to as the "160 acre homestead." Dr. Green had created Big Oaks Ranch, a rural property in excess of 700 acres on which all the land in question was located. Over the years approximately 521 acres were transferred from Dr. Green's individual ownership to a partnership in which his children were gifted shares over the years. The 177 acres remained Dr. Green's property and was not transferred to the partnership.

In their capacity as Limited Partners of, and derivatively for, Big Oaks Ranch Limited Partnership Appellees, Raymond and Richard Green, Appellant's brothers and Dr. Green's sons, sued Peggy Green, individually, and in her capacity as trustee, Personal Representative, and as General Partner of Big Oaks Ranch Limited Partnership. They convinced the trial court that the term "my homestead property" as used in the Dr. Green's Trust was ambiguous. They argued that "homestead" referred only to Dr. Green's house and only the 1.57 acres surrounding it. They relied on various evidence, including the tax collector's records showing that their father had applied for and obtained a homestead property tax designation for only that house and the surrounding 1.57 acres, rather than for the 160 acre "homestead."

## The Trust Language

The specific language that the parties argue about is found in Article 7 Section 3 of Dr. Green's trust under the heading "Specific Distributions of Trust Property," which reads:

> My Trustee shall distribute to my daughter, MARGARET GREEN (a/k/a PEGGY M. GREEN), discharged of trust, what is currently my homestead property with the street address of 623 Grand Chenier Cove, Chuluota, Florida, 32766, and as more particularly described as follows: (legal description provided by Trustmaker and no title search provided).

It is undisputed that no legal description was ever provided.

Immediately after the paragraph quoted above was the following language in the trust:

> My Trustee shall distribute to MARGARET GREEN (a/k/a PEGGY M. GREEN) all farm equipment, cattle, vehicles, and all other tangible personal property reasonably required to operate agricultural enterprises on the above described property.

## Trust Interpretation: Legal Principles, Relevant Facts, and Analysis

3

The polestar of trust interpretation is for the court to determine the settlor's intent. *Grassfield v. Grassfield*, 381 So. 3d 628, 631 (Fla. 2d DCA 2023) (citing *Vigliani v. Bank of Am., N.A.*, 189 So. 3d 214, 219 (Fla. 2d DCA 2016)). To the extent that the trust document is unambiguous, the inquiry is limited to consideration of the trust document itself. *Vigliani*, 189 So. 3d at 219. The settlor's intent should be determined from consideration of the entire document, rather than by looking only at isolated words or phrases. *Id.; see also Pounds v. Pounds*, 703 So. 2d 487, 488 (Fla. 5th DCA 1997). However, when necessary to clarify an ambiguous trust document, the trial court may properly consider extrinsic evidence. *John S. & James L. Knight Found., Inc. v. Urban Philanthropies, Inc.*, 248 So. 3d 233, 234–35 (Fla. 3d DCA 2018) (citing *Mariani v. Mariani*, 125 So. 3d 222, 223 (Fla. 4th DCA 2013) (additional citations omitted)); *Campbell v. Campbell*, 489 So. 2d 774, 777–78 (Fla. 3d DCA 1986).

We employ a de novo standard of review regarding interpretation of the trust document and determination of whether it is ambiguous. *Lieberman v. Sloto*, 407 So. 3d 526, 532 (Fla. 3d DCA 2025) (citing *Vetrick v. Keating*, 877 So. 2d 54, 56 (Fla. 4th DCA 2004)); *see also Brown v. Miller*, 2 So. 3d 321, 323–24 (Fla. 5th DCA 2008); *Miami Childs. Hosp. Found., Inc. v. Est. of Hillman*, 101 So. 3d 861, 863 (Fla. 4th DCA 2012); *Pounds*, 703 So. 2d at 488. As the trial court did, we find the term "my homestead property" as used in Article 7 Section 3 of Dr. Green's trust to be ambiguous because it could have been legitimately understood to have two different meanings. *See City of Pompano Beach v. Beatty*, 222 So. 3d 598, 600 n.1 (Fla. 4th DCA 2017); *Kernkamp v. Bolthouse*, 714 So. 2d 655, 656–57 (Fla. 5th DCA 1998); *First Nat'l Bank of Fla. v. Moffett*, 479 So. 2d 312, 313 (Fla. 5th DCA 1985). The term "my homestead property" without a legal description in the trust was ambiguous and could be understood to refer to either the 160 acre "homestead" on which his house was located, or to only his house and the 1.57 acres immediately surrounding it. That term needed to be clarified.

Having ruled that the term "my homestead property" was ambiguous, the trial court properly permitted the introduction of extrinsic evidence. Each side presented documentary and testimonial evidence which supported its version of what "my

4

homestead property" meant as used in Dr. Green's trust. The extrinsic evidence was conflicting. In its detailed final judgment, the trial court reviewed and commented on much of the documentary and testimonial evidence that was presented during trial. And the trial court commented on the credibility of various witnesses. When reviewing a trial court's assessment of witness credibility, we employ the abuse of discretion standard of review. *In re Doe*, 325 So. 3d 99, 100 (Fla. 5th DCA 2019).

It is black letter law that utilization of extrinsic evidence is intended to assist the court in determining the settlor's intent; it may not be used to rewrite or contradict express provisions in the trust. *Souder v. Johnson*, 501 So. 2d 745, 746 (Fla. 4th DCA 1987); *Owens v. Est. of Davis*, 930 So. 2d 873, 874 (Fla. 2d DCA 2006) (quoting *In re Est. of Barker*, 448 So. 2d 28, 31–32 (Fla. 1st DCA 1984) (additional citation omitted)). It is not the job of this Court to reweigh the evidence because the competent substantial evidence test applies to findings of fact in a nonjury trial. *Williams v. River Bend of Cocoa Beach, Inc.*, 281 So. 3d 546, 549 (Fla. 5th DCA 2019). However, the trial court cannot allow its interpretation of the trust document, consideration of extrinsic evidence, or argument of counsel to lead it to reach an absurd result. *Giller v. Grossman*, 327 So. 3d 391, 395 (Fla. 3d DCA 2021); *Roberts v. Sarros*, 920 So. 2d 193, 196 (Fla. 2d DCA 2006).

As noted above, the trial court determined that "my homestead property" as used in Dr. Green's trust referred only to his house and the 1.57 acres surrounding the house. In reaching that conclusion, the trial court discussed but rejected testimony regarding the absence of any history and inability to conduct agricultural enterprises or run cattle on only 1.57 acres. Instead, the trial court determined from other extrinsic evidence that Dr. Green intended for Peggy to have her cattle graze on all the remaining Big Oaks Ranch property. However, that is not what the trust says, as it specifies that the agricultural operations shall be conducted on "the above described property," which is his homestead property. The terms of the trust cannot be varied by extrinsic evidence, but that is what the trial court did in this regard.

The trial court's conclusion that "my homestead property" referred only to 1.57 acres cannot be squared with the very next instruction found in the trust that the "Trustee shall distribute to MARGARET GREEN (a/k/a PEGGY M. GREEN) all farm equipment, cattle, vehicles, and all other tangible personal property reasonably required to operate agricultural enterprises on the above described property."

The only property described above was "my homestead property" which had to be either approximately 160 acres or 1.57 acres. The uncontested extrinsic evidence admitted during trial showed that Dr. Green for years had run between 150 and 200 head of cattle on Big Oaks Ranch, which included the 160 acre homestead together with hundreds of other contiguous acres.[2] A trial court cannot disregard, reject, or ignore relevant, material facts established by uncontradicted, unimpeached evidence that "is not essentially illegal, inherently improbable or unreasonable, contrary to natural laws, opposed to common knowledge, or contradictory within itself." *Duncanson v. Serv. First, Inc.*, 157 So. 2d 696, 699 (Fla. 3d DCA 1963); *see also State v. Fernandez*, 526 So. 2d 192, 193 (Fla. 3d DCA 1988). As both sides agree, there was absolutely no evidence that Dr. Green ran cattle on the 1.57 acres surrounding his house; indeed, all the testimony on that specific issue was to the contrary, noting that this small plot of land was too heavily wooded for grazing.

Implicit in the trial court's ruling is its determination that Dr. Green, through his trust, intended for Peggy to conduct agricultural enterprises by running 175 to 200 head of cattle on an acre and a half, while using trucks and farm equipment on that same 1.57 acres. That is the epitome of an absurd result, which cannot be accepted. We reverse and remand for further proceedings.

Fiduciary Breaches, Removal of Appellant, and Damages

---

[2] The herd was estimated to be between 175 and 200 head of cattle at the time of Dr. Green's death.

6

Appellant was appointed general partner of Big Oaks Ranch Limited Partnership in 2003. In 2015, Appellant was designated in Dr. Green's will to serve as the personal representative ("PR") of his estate and was duly appointed by the probate court. She was also designated to serve as trustee of Dr. Green's trust.

As part of the proceedings below, Appellees asserted that Appellant breached fiduciary duties in each of her three roles. Evidence was received at the trial regarding what fiduciary duties Appellant owed as PR, trustee, and general partner. Evidence was also received regarding whether and how Appellant breached certain fiduciary duties in each role. The trial court determined that she had breached fiduciary duties in each role in a variety of ways, and it removed her from further serving as the PR, trustee, and general partner.

In a later bench trial on damages, the trial court received evidence and heard argument concerning the extent of damages caused by Appellant's breaches of fiduciary duties. It entered a final judgment setting forth the evidence, its findings, and damages awarded, including a setoff for services rendered by Appellant that were associated with the ongoing management of Big Oaks Ranch which, under the circumstances, had benefited Appellees.

A review of the initial final judgment reveals that the trial court's ruling on certain breaches of fiduciary duty in each role, may be categorized as directly or indirectly related to the trial court's determination of what "homestead property" had been devised to Appellant. The same can be said of certain damages awarded in the next final judgment on damages. Those rulings were challenged, broadly, on appeal by Appellant arguing simply that they must be reversed if the trial court's decision on what "homestead property" meant was reversed; no other grounds were advanced. As to this category of fiduciary breaches and damages, we remand for further proceedings in the trial court consistent with this opinion.

On the other hand, the trial court's rulings on other breaches by Appellant of fiduciary duties in each role, along with certain damages, could be categorized as unrelated to the now-reversed

7

determination of what "homestead property" had been devised to Appellant. Appellant did not challenge those rulings on appeal and those are affirmed.

We do find that the trial court's rulings that removed Appellant as PR, trustee, and general partner are supported by competent, substantial evidence, most of which was unrelated to any determination of what "homestead property" means. Those removals are affirmed.

Motions for Appellate Attorneys' Fees

Both sides filed motions with this Court seeking appellate attorneys' fees. Appellees based their motion on being prevailing parties in this appeal; the results speak for themselves. Appellant stated that her motion for attorneys' fees and costs was being filed with our Court in an abundance of caution, as the controlling Florida law indicates that awarding fees for services rendered benefitting an estate or trust is the exclusive province of the probate court even when a party prevails on appeal. "We agree that is within the exclusive jurisdiction of the probate court". *See Garvey v. Garvey*, 219 So. 2d 685, 686 (Fla. 1969); *Townsend v. Mansfield*, 329 So. 3d 174, 175 (Fla. 1st DCA 2021); *Est. of Udell*, 501 So. 2d 1286, 1288–89 (Fla. 4th DCA 1987). Accordingly, we remand these motions to the probate court for its determination as to entitlement and amount.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further proceedings.

LAMBERT, J., concurs.
SOUD, J., concurs in result with opinion.

–––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

–––––––––––––––––––––––––

SOUD, J., concurring in result.

I concur with my esteemed colleagues in affirming in part and reversing in part the trial court's final judgment entered in favor of Appellees Raymond and Richard Green against their sister Appellant Peggy Green and remanding the case with instructions for further proceedings consistent with the majority opinion.

My reasoning for reversing the trial court's determination of the land to be distributed to Peggy Green is that the language of the trust documents devising the "homestead property" to her can only be reasonably and fairly read as encompassing the approximately 160 acres on which she is to "operate agricultural enterprises." The same trust documents require that the trustee distribute to Peggy Green "all farm equipment, cattle, vehicles, and all other tangible personal property reasonably required" for that purpose. And most importantly, the agricultural enterprises she is to operate are to be "on the [homestead] property."

Here, the father's intent in the trust documents is unambiguous when read in context. *See Giller v. Grossman*, 327 So. 3d 391, 395 (Fla. 3d DCA 2021) ("Intent is ascertained from the four corners of the instrument by considering all the provisions in context, rather than from individual, select portions or forms of words."). And the father's intent, as expressed in the trust documents, controls. *See Vigliani v. Bank of Am., N.A.*, 189 So. 3d 214, 219 (Fla. 2d DCA 2016).

It simply is not reasonable to read this language to suggest the homestead property at issue is limited to the 1.57 acres suggested by Appellees. If that were true, then, as Peggy Green argues, the parties' father would have devised to his daughter "a farm's worth of equipment and animals—but no farm." Such a reading claimed by Appellees is simply unreasonable and unsupported by the language of the document read in its proper context.